UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEVIN HALL,

                              Petitioner,

       -v-                                              9:10-CV-0837 (DNH)

NORMAN BEZIO,

                              Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

KEVIN HALL
Petitioner, pro se
07-A-3922
Great Meadow Correctional Facility
P.O. Box 51
Comstock, NY 12821

HON. ERIC T. SCHNEIDERMAN          THOMAS B. LITSKY, ESQ.
Attorney General for the State of New York   Ass't Attorney General
Attorney for Defendant
120 Broadway
New York, NY 10271


DAVID N. HURD
United States District Judge


**<u>MEMORANDUM-DECISION and ORDER</u>**

I.     **<u>BACKGROUND</u>**

       The state court records reflect that on October 14, 2006, Cheryl White lived in a

house on Hudson Road in Albany, New York.  <u>See</u> Transcript of Trial of Kevin Hall

(5/14/07) ("Trial Tr.") at p. 216.  When she returned to her home at approximately 2

a.m. on October 15, 2006, she noticed that the back door to her home was partially open and her telephone answering machine and jewelry box were missing.  Id. at pp. 216-17.

The following day, Patrick O'Keefe, who lived in a house on Tudor Road in Albany, id. at p. 233, returned to his home at about 9:30 p.m. and noticed that a light which he had turned off in a bedroom had been turned on, and the lock to the door to his residence had been "completely ripped off the [side] door."  Id. at pp. 234-35.  Upon further investigation, O'Keefe discovered that a laptop computer was missing from the dining room of his home, several drawers of a dresser in his bedroom had been emptied, and a Mastercard credit card was missing.  Id. at pp. 235-36.

The record also establishes that on October 16, 2006, William Frye lived in a residence located on Linden Road, near New Scotland Avenue in Albany.  Id. at p. 246. On that day, Frye left his house at about 6:00 a.m. and returned home at about 8:45 p.m. that same day.  Id. at p. 247.  When Frye returned home, he realized that his jewelry box – where he kept his dog tags and other property – was missing.  Id. at pp. 247-48.  Frye subsequently provided the Albany Police Department with a statement concerning the burglary, and also identified several items that belonged to Frye that were recovered by the police during the course of their investigation into the burglary of Frye's home, including a set of dog tags, a Visa debit card, and various other items.  Id. at pp. 248-500.

The record further reflects that on the evening of October 16, 2006, at approximately 9:00 p.m., Christopher McKenna was sitting with his wife on the front

2

porch of their home on Van Schoick Avenue when McKenna heard a noise coming from his fenced-in backyard. Trial Tr. at pp. 130-31, 155. Upon investigation, McKenna discovered petitioner, Pro Se Kevin Hall in McKenna's backyard, on a bicycle with a bag over his shoulder. Id. at pp. 131-33. McKenna approached Hall and asked him why he was in McKenna's yard, to which Hall responded that "he was trying to get away from someone." Id. at pp. 133-34. After a brief conversation between the two men, McKenna escorted Hall from McKenna's premises, and Hall rode his bike toward New Scotland Avenue. Id. at pp. 134-35. After a brief discussion about the incident with his wife, McKenna called the police and informed them as to what had just transpired. Id. at pp. 135-36.

Albany Police Officers Salvatore Sturiale and Robert Paone responded to McKenna's call to the police. Id. at pp. 154-55. Officer Paone questioned McKenna concerning the individual whom McKenna had encountered in his backyard, id. at pp. 155-56, after which Officer Paone provided a description of the suspect to other police officers. Id. at p. 156. Officer Sturiale thereafter learned that an individual matching the description of the perpetrator had been stopped by the police. Id. at pp. 136-37. An officer brought McKenna to view that individual, however McKenna informed the police that the man who was being detained was not the same man as the person whom McKenna had previously encountered in his backyard. Id. at pp. 136-37. Later on that evening, Officer Sturiale saw a male riding a bicycle on New Scotland Avenue and carrying several bags. Id. at pp. 156-57. After observing the individual for a period of time, the officer pulled his patrol car near the individual because the officer believed

3

that he matched the description of the intruder in McKenna's yard. Id. at pp. 157-59.
Hall then turned his bicycle onto a nearby driveway, abandoned his bicycle, and began
running away from the scene. Id. at pp. 159-60. Officer Sturiale called for backup
assistance and began pursuing Hall on foot. Id. at pp. 159-60. With the assistance of a
police dog, law enforcement agents were eventually able to locate Hall in a backyard,
crouching down on the ground, covering his body with a jacket. Id. at pp. 160-65. Hall
was thereafter placed under arrest. Id. at p. 165.

At the time of his arrest, Hall was searched and a Visa card bearing the name of
William Frye was found in Hall's front pocket. Id. at pp. 165-66. Officer Sturiale
testified that when he asked the individual about the card, Hall explained to Officer
Sturiale that the card belonged to Hall's cousin. Id. at p. 166. At the time of his arrest,
the police also recovered other property that was on Hall's person, including jewelry,
Frye's dog tags, cuff links and other items. Id. at pp. 166-67. Following Hall's arrest,
Officer Thomas Shea recovered O'Keefe's credit card, White's college identification
card and a backpack near the area where Hall had been arrested. Id. at pp. 260-62.

After the police apprehended Hall, an officer returned to McKenna's home and
he agreed to accompany the police to the location where Hall was being detained. Id.
at pp. 137-38. When they arrived at that location, an officer turned a spotlight on Hall,
and McKenna "immediately" recognized the individual who was being detained as the
man whom had McKenna had encountered in his yard earlier that day. Id. at pp. 139-
40.

As a result of the foregoing, on October 24, 2006, an Albany County grand jury

4

returned a seven count indictment against Hall. <u>See</u> Dkt. No. 32-3 at p. 13

("Indictment"). In that accusatory instrument, Hall was charged with: (1) second

degree burglary and third degree grand larceny (with respect to the White residence);

(2) second degree burglary and fourth degree grand larceny (with respect to crimes

involving O'Keefe); (3) second degree burglary and fourth degree grand larceny (with

respect to crimes involving Frye); and (4) criminal possession of stolen property in the

fourth degree. <u>See</u> Indictment, Counts One through Seven.[1]

Hall's jury trial on the foregoing charges commenced in Albany County Court on

May 14, 2007, with Albany County Court Judge Thomas A. Breslin presiding. In Hall's

defense to the charges, he testified that on the evening of October 16, 2006, he was

looking through trash "for stuff to salvage," with another individual, whose name he did

not know. Trial Tr. at pp. 279-280. During the course of that salvaging operation, Hall

claimed that he came upon a box of silverware, "costume" jewelry, credit cards and

other items which he decided to take. <u>Id</u>. at pp. 286-291. He further testified that after

having rummaged through the trash, he rode off on his bicycle and soon thereafter a

police officer drove up next to Hall and began honking the horn of the police car. <u>Id</u>. at

pp. 300-01. Since Hall had not done anything wrong, he testified that he had no

intention of stopping for the officer. <u>Id</u>. at p. 301. When a second police car

approached Hall from the opposite direction, Hall believed that he was going to be run

off the road, so he rode his bicycle onto a driveway, abandoned the bike and began to

---

[1] The copy of the Indictment provided to this Court does not contain a copy of the third count in that accusatory instrument. <u>See</u> Indictment. The record reflects, however, that in that count, Hall was charged with second degree burglary regarding the O'Keefe residence. <u>E.g.</u> Dkt. No. 32-4 at p. 70 (copy of verdict sheet provided to petit jury).

leave the area.  Id. at pp. 301-03.  He explained to the jury that he did not wish to talk to the police at that time because he suffered from post-traumatic stress disorder due to the fact that he had recently been "tortured" by the police.  Id. at p. 303.  Hall specifically denied telling Officer Sturiale that Hall was a cousin of William Frye, id. at p. 308, and also denied having entered any of the three homes that he was charged with burglarizing.  Id. at pp. 308-10.

At the conclusion of his trial, the jury convicted Hall of one count of burglary in the second degree, grand larceny in the fourth degree, and criminal possession of stolen property in the fourth degree, all related to the crimes involving the Frye residence.  Trial Tr. at p. 422.  The jury found Hall not guilty of the charges relating to the homes of White and O'Keefe.  Id. at pp. 421-22.

On July 11, 2007, Hall appeared before Judge Breslin for sentencing on the above convictions.  See Transcript of Sentencing of Hall (7/11/07) (Dkt. No. 32-16) ("Sentencing Tr.").  At that proceeding, the County Court sentenced Hall to a determinate sentence of fifteen years for the burglary conviction, a concurrent, indeterminate sentence of one and one-third to four years for the grand larceny conviction, and a consecutive, indeterminate term of one and one-third to four years relating to Hall's conviction on the charge of criminal possession of stolen property.  Id. at p. 19.

Hall appealed the foregoing convictions and sentences to the New York State, Supreme Court, Appellate Division, Third Department.  In support of his direct appeal, Hall asserted the following claims:  (1) the County Court erred in admitting testimony regarding the pre-trial identification of Hall made by McKenna; (2) the evidence of his

guilt was legally insufficient, and the guilty verdict was against the weight of the evidence; and (3) trial counsel was ineffective because he did not raise the issue of whether Hall was mentally competent to stand trial before the County Court.  See Appellate Brief on Appeal (3/31/08) (Dkt. No. 32-1) ("App. Br.").[2]  Hall filed a supplemental Pro Se Appellate Brief in support of his direct appeal.  See Dkt. No. 32-9 ("Pro Se Appellate Brief").  In that submission, Hall argued that:  (1) he was denied the opportunity to consult with his appellate attorney regarding legal issues that should be considered in his appeal; and (2) he was denied the ability to review the record and trial transcripts in order to prepare his Pro Se Appellate Brief.  Id.  The Albany County District Attorney ("District Attorney") thereafter filed a memorandum of law in opposition to that appeal.  Dkt. No. 32-10.

On December 24, 2008, the Third Department denied Hall's appeal.  People v. Hall, 57 A.D.3d 1222 (3d Dep't 2008), leave denied, People v. Hall, 12 N.Y.3d 817 (2009).

**B.    This Action**

Petitioner commenced this action pursuant to 28 U.S.C. § 2254 on July 9, 2010. See Petition, Dkt. No. 1.  After Hall filed an amended petition that was not in compliance with the Federal Rules of Civil Procedure, see Dkt. No. 6, petitioner filed a second amended pleading herein on September 21, 2010.  See Dkt. No. 8 ("Am. Pet."). In that pleading, Hall asserts numerous grounds in support of his request for federal habeas intervention.  Specifically, he argues that the above-described convictions

---

[2]  Hall was represented by Paul Edwards, Esq. at his criminal trial and by Thomas J. Carr, Esq. in Hall's direct appeal.

7

should be vacated because: (1) the stop and arrest of petitioner by the police violated his constitutional rights; (2) he was wrongfully denied the opportunity to question the legality of his detention at the time of his arrest; (3) he was improperly denied his right to testify before the Grand Jury that indicted him; (4) the prosecutor improperly referred to an uncharged crime involving petitioner during the course of Hall's trial; (5) the manner in which the District Attorney prosecuted the case against Hall deprived him of his constitutional rights; (6) he was denied his right to be present at his trial; (7) the evidence presented by the District Attorney regarding the burglary charge of which Hall was convicted was insufficient to sustain the jury's verdict on that charge; (8) certain of the County Court's instructions to the jury were defective; (9) the Appellate Division wrongfully denied Hall access to the state court record in preparing his Pro Se Appellate Brief; (10) he was denied the effective assistance of trial counsel; (11) the prosecutor engaged in misconduct in the related criminal matter which in turn deprived Hall of his right to a fair trial; and (12) Hall's appellate counsel rendered ineffective assistance.[3] See Am. Pet.

On February 28, 2011, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed a response in opposition to Hall's amended

---

[3] As will be seen, many of the grounds for relief in Hall's amended petition assert different arguments in support of a specific legal theory upon which Hall claims he is entitled to federal habeas relief. For example, Grounds Ten through Twenty-Nine in his amended petition all assert various theories in support of Hall's claim that he received the ineffective assistance of trial counsel. See Am. Pet., Grounds Ten through Twenty-Nine. Additionally, the Fourth, Fifth, and Thirtieth through Thirty-Seventh Grounds in that pleading all refer to misconduct purportedly committed by the District Attorney in the related criminal matter. See Am. Pet., Grounds Four, Five, and Thirty through Thirty-Seven.

After having reviewed the submissions filed by the parties, it is appropriate to address the claims raised by petitioner by reference to the legal theories asserted by Hall, rather than by the grounds in the amended petition in which he asserts his grounds for relief.

petition.  See Dkt. No. 30.  Respondent has also submitted a memorandum of law in opposition to Hall's Amended Petition (Dkt. No. 31) ("Resp. Mem."), together with various state court records relating to the criminal matter below.  See Dkt. No. 32.  In opposing Hall's amended petition, respondent argues that petitioner has failed to exhaust many of the claims he asserts in his amended pleading.  See Resp. Mem. at pp. 15-22.  Alternatively, respondent argues that all of Hall's grounds for relief should be denied as meritless.  Id. at pp. 21-74.

On June 29, 2011, Hall filed a traverse in further support of his petition.  Dkt. No. 49 ("Traverse").[4]  This matter is currently pending for disposition.

## II.    DISCUSSION

Respondent initially argues that some of Hall's claims should be dismissed because he failed to fully exhaust those grounds for relief prior to commencing the present action.  See Resp. Mem. at pp. 15-22.  Therefore, a brief review of the exhaustion doctrine applicable to federal habeas petitions is appropriate.

### A.    Exhaustion Doctrine

It is well-settled that a federal district court "'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State.'"  Shabazz v. Artuz, 336 F.3d 154, 160 (2d Cir. 2003) (quoting Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001)); see also Hill v. Mance, 598 F. Supp. 2d 371, 375 (W.D.N.Y. 2009).  This is because "[s]tate courts, like federal

---

[4]  When docketing Hall's Traverse, the Clerk generated page numbers and those page numbers will be used when referencing the Traverse.

courts, are obliged to enforce federal law." Galdamez v. Keane, 394 F.3d 68, 72 (2d Cir. 2005) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)) (citations omitted).  As the Supreme Court noted in O'Sullivan, "[c]omity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." O'Sullivan, 526 U.S. at 844 (citations omitted); see also Galdamez, 394 F.3d at 72 (quotation omitted).[5]  Thus, it must be determined whether petitioner has fully exhausted the above-mentioned grounds for relief.

A petitioner exhausts his state remedies in the federal habeas context by:  "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court (and lower courts) about both the factual and legal bases for the federal claim." Ramirez v. Attorney Gen., 280 F.3d 87, 94 (2d Cir. 2001) (quoting Picard v. Connor, 404 U.S. 270, 276-77 (1971)).  Thus, "in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Cox v. Miller, 296 F.3d 89, 99 (2d Cir. 2002) (quoting Daye v. Attorney General of N.Y., 696 F.2d 186, 192 (2d Cir. 1982)); see also Berry v. Hulihan, No. 08 Civ. 6557, 2009 WL 233981, at *2 (S.D.N.Y. Jan. 28, 2009) (citations omitted); Jackson v. Senkowski, No. 03 CV 1965, 2007 WL 2275848, at *5 (E.D.N.Y. Aug. 7, 2007).  A "state prisoner does not 'fairly present' a claim to a state court" where the state court brief "does not alert

---

[5]  This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan, 526 U.S. at 845 (quotation and citations omitted); see also Galdamez, 394 F.3d at 72 (quotation omitted).

[the court] to the presence of a federal claim." <u>Baldwin v. Reese</u>, 541 U.S. 27, 32

(2004); <u>see also</u> <u>Williams v. Breslin</u>, No. 06-CV-2479, 2008 WL 4179475, at *3

(E.D.N.Y. Sept. 9, 2008); <u>Aguilera v. Walsh</u>, No. 01 CIV. 2151, 2001 WL 1231524, at *5

(S.D.N.Y. Oct. 17, 2001) (noting that "fair presentation" requirement of exhaustion

doctrine requires "constitutional claims to [be presented] to the highest state court").

　　　　As noted above, two briefs were submitted in conjunction with Hall's direct

appeal of his conviction.  In counsel's appellate brief, counsel claimed that:  (1) the Trial

Court erroneously allowed McKenna to testify concerning his pretrial identification of

Hall; (2) the District Attorney failed to provide sufficient evidence to the jury with respect

to the crimes of which Hall was found guilty; and (3) trial counsel rendered ineffective

assistance because he failed to raise the issue of Hall's mental competency to stand

trial with the Trial Court.  <u>See</u> App. Br.  Petitioner asserted two additional appellate

claims in his Pro Se Appellate Brief; he argued that he was deprived of his right to

consult with his attorney before counsel filed his appellate brief, and also that Hall's

inability to review the state court record prior to preparing his Pro Se Appellate Brief

prevented him from including in that brief "the necessary facts needed to demonstrate .

. . all the illegal and intentional actions taken by state governmental officials to

unlawfully imprison" Hall.  Pro Se Appellate Brief at p. 1.

　　　　Careful review of those briefs demonstrate that none of those memoranda

referred, in any way, to Hall's current claims which allege that:  (1) he was subjected to

an illegal stop and seizure (Am. Pet., Ground One; Traverse at pp. 11-14); (2) he was

wrongfully denied a preliminary examination to inquire into the legality of his arrest

and/or detention (Am. Pet., Ground Two; Traverse at pp. 14-16); (3) state officials

improperly failed to transport Hall to the grand jury proceeding so he could testify on his own behalf at that matter (Am. Pet., Ground Three; Traverse at pp. 16-17); (4) the prosecutor engaged in misconduct (Am. Pet., Grounds Four, Five, Thirty through Thirty-Seven; Traverse at p. 8); (5) he was denied his right to be present at his trial because he was placed on suicide watch (Am. Pet., Ground Six; Traverse at p. 17); and (6) the County Court's instructions to the jury as to the terms "inference" and "circumstantial evidence" were improper (Am. Pet., Ground Eight), because Hall's appellate briefs were silent as to the foregoing claims.[6]  These claims are therefore unexhausted.

Additionally, many of Hall's claims regarding his trial counsel's purportedly inadequate performance are based upon matters evident in the record.  Specifically, the following record-based claims concerning the performance of Hall's trial counsel have never been presented by petitioner to the state court:  (1) trial counsel failed to argue to the County Court that Hall was subjected to an illegal stop and seizure around the time of his arrest (Am. Pet., Ground Ten); (2) defense counsel did not challenge the fact that Hall was required to wear "a prison wristband" (id., Ground Twelve; Traverse at p. 18); (3) trial counsel failed to object to the prosecution's use at trial of witnesses not disclosed on the District Attorney's witness list (Am. Pet., Ground Fourteen); (4) defense counsel did not object to the prosecution's use of "false evidence" at trial (id., Ground Fifteen); (5) the prosecution called certain witnesses without any objection of trial counsel (id., Ground Sixteen); (6) the cross-examination of prosecution witnesses conducted by trial counsel was inadequate (id., Ground Seventeen); (7) defense

---

[6]  Hall noted in his Amended Petition that, other than his direct appeal, he has not filed any other challenges to his conviction.  See Amended Petition at ¶ 10.

counsel failed to object to the introduction of certain evidence at Hall's trial (id., Ground Nineteen); (8) the conduct of trial counsel at Hall's trial was "not professional in front of [the] jury" (id., Ground Twenty); (9) defense counsel's summation included derogatory statements about Hall and contradicted portions of his testimony regarding his defense to the charges against him (id., Grounds Twenty-Two, Twenty-Three); (10) trial counsel wrongfully failed to request jury charges regarding the prosecution's loss of evidence and failure to call certain witnesses (id., Grounds Twenty-Four, Twenty-Five); (11) defense counsel failed to challenge the propriety of the jury's verdict (id., Ground Twenty-Six, Twenty-Seven); and (12) trial counsel failed to object to portions of the pre-sentence investigation report, and thereafter misrepresented certain facts about Hall to the Trial Court at the time he was sentenced (id., Grounds Twenty-Eight, Twenty-Nine); see also Traverse at pp. 21-22.

Since Hall has failed to fairly present any of the above-referenced claims to the state courts prior to commencing this action, they are unexhausted for purposes of this action.

When a habeas petitioner does not fully exhaust his claims prior to commencing an action pursuant to 28 U.S.C § 2254, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." Aparicio, 269 F.3d at 90 (citing Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997)); see also Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000).

Petitioner cannot now file a second appeal with the Third Department as to any of the above claims because a defendant is "entitled to one (and only one) appeal to

the Appellate Division." See Aparicio, 269 F.3d at 91 (citations omitted).  Moreover,

"New York does not otherwise permit collateral attacks on a conviction when the

defendant unjustifiably failed to raise the issue on direct appeal."  Aparicio, 269 F.3d at

91 (citing New York Criminal Procedure Law ("CPL") § 440.10(2)(c)); see Parker v.

Ercole, 582 F. Supp. 2d 273, 290 (N.D.N.Y. 2008) (quotation and citation omitted)

(Hurd, J.).  This procedural bar also prevents a petitioner from properly asserting,

through a CPL motion, record-based claims alleging ineffective assistance of trial

counsel.  McCormick v. Morrisey, ___F. Supp. 2d ___, No. 07-CV-6317, 2011 WL

881814, at *6 (W.D.N.Y. Mar. 14, 2011) (citing Sweet v. Bennett, 353 F.3d 135, 140-41

(2d Cir. 2003)); McCallie v. Poole, No. 07-CV-0473, 2011 WL 1672063, at *9 (W.D.N.Y.

May 3, 2011) (finding record-based ineffective assistance claim to be unexhausted and

procedurally defaulted); Ortiz v. Heath, No. 10-CV-1492, 2011 WL 1331509, at *7

(E.D.N.Y. Apr. 6, 2011) ("New York courts routinely deny 440 motions on ineffective

assistance of counsel claims where the claim is grounded in the trial record but the

defendant failed to raise the claim on direct appeal") (citation omitted).

In light of the foregoing, all of the above-referenced claims are "deemed

exhausted" for purposes of petitioner's habeas application.  St. Helen v. Senkowski,

374 F.3d 181, 183-84 (2d Cir. 2004); Spence v. Superintendent Great Meadow

Correctional Facility, 219 F.3d 162, 170 (2d Cir. 2000).  Although these claims are all

"deemed exhausted," they are also procedurally defaulted.  See Sweet, 353 F.3d at

140-41; Aparicio, 269 F.3d at 90 (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1

(1991)); see also Spence, 219 F.3d at 170; McCormick, ___F. Supp. 2d at ___, 2011

WL 881814, at *6; Ciochenda v. Artus, No. 06 Civ. 5057, 2009 WL 1026018, at *5

(S.D.N.Y. Apr. 9, 2009) (unexhausted claims which petitioner can no longer pursue in state court are procedurally forfeited).

Federal courts may only consider the merits of procedurally defaulted claims where the petitioner can establish both cause for the procedural default and resulting prejudice or, alternatively, that a fundamental miscarriage of justice would occur absent federal court review.  See Dixon v. Miller, 293 F.3d 74, 80-81 (2d Cir. 2002) (quoting Coleman, 501 U.S. at 750); St. Helen, 374 F.3d at 184 (holding that, "[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.'") (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)); Calderon v. Perez, No. 10 Civ. 2562, 2011 WL 293709, at *20 (S.D.N.Y. Jan. 28, 2011); Parker v. Phillips, No. 05-CV-1323, 2008 WL 4415255, *3 (E.D.N.Y. Sept. 24, 2008) (holding that federal courts may only consider procedurally barred claims where the petitioner establishes either cause for his default and prejudice therefrom, or that he is actually innocent of the crimes of which he was convicted).

To establish legal "cause" which would enable consideration of petitioner's procedurally forfeited claims, Hall must show that some objective, external factor impeded his ability to fully exhaust the above-mentioned claims.  See Coleman, 501 U.S. at 753; Restrepo v. Kelly, 178 F.3d 634, 638 (2d Cir. 1999) (citation omitted); Pinero v. Greiner, 519 F. Supp. 2d 360, 383 (S.D.N.Y. 2007) (quoting Restrepo, 178 F.3d at 638).  Examples of such external factors include "interference by officials," the ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was

15

not reasonably available" at the time of the petitioner's default.  Murray v. Carrier, 477
U.S. 478, 488 (1986) (internal quotations and other citation omitted); Ikker v. Taylor, No.
08 CV 3301, 2008 WL 5110866, *4 (E.D.N.Y. Dec. 3, 2008) (quotation omitted).
Nowhere in this action does Hall argue – much less establish – that legal cause exists
which excuses his failure to fully exhaust the grounds for relief mentioned above.
Instead, Hall argues that because the state courts below have purportedly been
unwilling to properly consider meritorious claims raised by Hall, "[i]t is quite apparent
that any attempt to seek remedy" by Hall from the state courts concerning his
unexhausted claims "would be futile for the petitioner."  Traverse at p. 11.  However,
petitioner has cited no authority that excuses a party's obligation to fairly present his
claims to the state courts because of the petitioner's belief that the state courts would
not properly consider his claims.

Since petitioner has not established cause for these procedural defaults, whether
he has suffered the requisite prejudice need not be considered because federal habeas
relief is unavailable under this limited exception permitting review of procedurally
forfeited claims unless the petitioner demonstrates both cause and prejudice.  See
Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985); Long v. Lord, No. 03-CV-0461, 2006
WL 1977435, *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.) (footnote and citations
omitted); D'Alessandro v. Fischer, No. 01 Civ. 2551, 2005 WL 3159674, *9 n.10
(S.D.N.Y. Nov. 28, 2005) ("As Petitioner has not shown cause for his default, this Court
need not even reach the question of whether Petitioner can show prejudice.") (citing
Stepney, 760 F.2d at 45).

The finding that Hall has failed to demonstrate cause for his procedurally

16

defaulted claims does not necessarily preclude considering such grounds for relief, however, because, as noted above, a federal court may nonetheless properly review such claims if it is convinced that the failure to consider the defaulted claims would amount to a fundamental miscarriage of justice.  E.g., Dixon, 293 F.3d at 80-81 (citation omitted).  However, the Second Circuit has noted that:

> the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." Schlup v. Delo, 513 U.S. 298, 321-22, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).  " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley[], 523 U.S. [at] 623 . . . .  "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " Id. (citing Schlup, 513 U.S. [at] 327-28) . . . (some internal citations and quotation marks omitted)).

Sweet, 353 F.3d at 142; see also D'Alessandro, 2005 WL 3159674, at *8 (citations omitted); Marengo v. Conway, 342 F. Supp. 2d 222, 228 (S.D.N.Y. 2004) (quotation and other citation omitted).

Hall undeniably argues that he is actually innocent of the crimes of which he was convicted; he contends that "he did not burglarize Mr. Frye's home.  [Petitioner] also did not steal Mr. Frye's debit card, nor did the petitioner know of any illegality attached to such card."  Traverse at p. 7.  However, in conjunction with this proceeding, the state court record has been reviewed.  As is discussed more fully in addressing Hall's claim challenging the sufficiency of the evidence adduced at trial, review of the state court record demonstrates that ample evidence of Hall's guilt of the burglary, larceny and criminal possession of stolen property charges of which he was convicted was presented at trial.

Since Hall cannot now seek safe harbor from the dismissal of his defaulted claims under this final exception permitting habeas review of his procedurally defaulted claims, the claims he asserts in Grounds One through Six, Eight, Ten, Twelve, Fourteen through Seventeen, Nineteen, Twenty, and Twenty-Two through Thirty-Seven of his amended habeas petition will be denied as procedurally forfeited.[7]

**B.    Remaining Claims**

**1.    Unexhausted Claims That Are Not Procedurally Defaulted**

As is discussed more fully, several of Hall's grounds for relief are unexhausted but may not be properly deemed by to be both exhausted and procedurally defaulted. Therefore, the standard of review that is to be utilized in considering such unexhausted claims will be briefly examined.

**a.    Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal district court may deny – but not grant – unexhausted claims on the merits and consider the merits of any exhausted claims.  See 28 U.S.C. § 2254(b)(2); see also Aparicio, 269 F.3d at 91 n.5 (citation omitted); Vanness v. Rock, No. 9:08-CV-0361, 2009 WL 1870940, *6 n.10 (N.D.N.Y. June 29, 2009) (Sharpe, D.J.) (quoting Aparicio, 269 F.3d at 91 n.5) (other citation omitted).

However, to date, the Second Circuit has not yet clearly articulated the appropriate standard a federal district court should utilize when considering

---

[7]  Hall appears to assert new grounds for relief in his Traverse.  For example, in that brief, he argues, for the first time, that the Trial Court was not impartial (Traverse at pp. 5-6); and that the jury's verdict was repugnant (id. at p. 7).  However, these unexhausted claims are denied because petitioner has failed to establish cause for his failure to exhaust these claims in the state courts, or that he is actually innocent of the charges of which he was found guilty.

unexhausted habeas claims that may not be found by a federal district court to be procedurally defaulted.  District courts in New York have generally utilized a "patently frivolous" test in considering such claims.  See, e.g., Love v. Kuhlman, 99 Civ. 11063, 2001 WL 1606759,*5 (S.D.N.Y. Dec. 12, 2001); Cruz v. Artuz, No. 97-CV-2508, 2002 WL 1359386, at *14 (E.D.N.Y. June 24, 2002); Toland v. Walsh, No. 02-CV-0399, 2008 WL 820184, at *15 (N.D.N.Y. Mar. 26, 2008) (Sharpe, J.); Hammock v. Walker, 224 F. Supp. 2d 544 (W.D.N.Y. 2002).  A minority of courts have noted that such unexhausted claims should be denied where the petitioner did not raise even a colorable federal claim.  See Hernandez v. Lord, No. 00 Civ. 1235, 2000 WL 1774717, at *4 & n.8 (S.D.N.Y. July 21, 2000) (citing cases applying that standard).

However, since Hall's unexhausted claims alleging ineffective assistance of both trial and appellate counsel must be denied under either of these standards, there is no need to determine which of these competing tests should be utilized when considering such claims.

### b.    Consideration of Hall's Unexhausted Claims

### i.    Ineffective Assistance of Trial Counsel

In addition to Hall's procedurally barred, record-based claims alleging ineffective assistance of trial counsel, Hall has also asserted several grounds for relief alleging ineffective assistance of trial counsel that are not based upon matters contained in the record and therefore may not be properly deemed to have been exhausted.  These theories include petitioner's claims that his trial counsel:  (1) failed to inform the County Court that Hall was suing a family member of one of the jurors selected for the petit

jury; (2) did not advise the Trial Court that a juror appeared to be sleeping during the trial; (3) refused to allow Hall "to see the transcript statements of witnesses who testified against me at trial;" and (4) failed to "obtain evidence" for Hall's trial.  See Am. Pet., Grounds Eleven, Thirteen, Eighteen and Twenty-One.

The Sixth Amendment to the United States Constitution provides that:  "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const., amend. VI.  To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both:  (1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and (2) resulting prejudice that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 688-90 (1984); Wiggins v. Smith, 539 U.S. 510, 521 (2003) (holding that the legal principles that govern claims of ineffective assistance of counsel were established in Strickland).

The record demonstrates that Hall actively participated in the voir dire of the jury – he routinely approached the bench when various matters concerning prospective jurors were discussed with counsel and the court.  See Trial Tr. at pp. 22, 23, 24, 25, 26, 27, 32, 33, 61, 72, 81, 82, 83, and 95.  Hall also conferred with his trial counsel during jury selection.  Id. at p. 62.  Therefore, his claim that trial counsel (with Hall's active participation) allowed an individual whom Hall had sued in civil court to nevertheless be chosen as a member of the jury at petitioner's criminal trial strains credulity.  Furthermore, there is no evidence which establishes this claim was

presented to the state courts, or currently presented.  Hall's failure to provide record

evidence concerning his claim that an individual who was ultimately chosen on the jury

that convicted him was a defendant in a civil lawsuit brought by Hall represents a failure

on his part to establish the claim he asserts in his Eleventh Ground for relief.  See

Whitaker v. Meachum, 123 F.3d 714, 716 (2d Cir. 1997) (citing Walker v. Johnston, 312

U.S. 275, 286 (1941)) (petitioner has the burden of "sustaining his allegations by a

preponderance of evidence" on collateral review) (other citations omitted); Celleri v.

Marshall, No. 07-CV-4114, 2009 WL 1269754, *17 (E.D.N.Y. May 6, 2009) (citation

omitted); Rosario v. Ercole, 582 F. Supp. 2d 541, 550 (S.D.N.Y. 2008) (citation

omitted).

Hall has similarly failed to provide evidence supporting his claims that a juror

slept during the trial, or that Hall's trial counsel failed to "allow [Hall] to see the transcript

statements of witnesses who testified against [Hall] at trial."  See Am. Pet., Grounds

Thirteen, Eighteen.  Furthermore, review of the documents provided has failed to

provide evidence substantiating these claims.  Therefore, Hall has failed to meet his

burden of establishing the claims he asserts in his Thirteenth and Eighteenth Grounds

for relief.

Next, although petitioner argues in his Twenty-First Ground that his attorney's

pretrial preparation was inadequate because such counsel "failed to obtain evidence" in

preparing for Hall's trial, see Am. Pet., Ground Twenty-One, it should be noted that:

"[a] petitioner's 'bald assertion that counsel should have conducted a more thorough

pretrial investigation fails to overcome the presumption that counsel acted reasonably.'"

Campbell v. Greene, 440 F. Supp. 2d 125, 149 (N.D.N.Y. 2006) (McCurn, S.J.) (quoting

Atkinson v. United States, No. 05-CV-286, 2005 WL 3555946, at *7 (N.D.N.Y. Dec. 28, 2005) (McAvoy, S.J.) (quotations and citations omitted).  Moreover, this claim is squarely contradicted by the observations of the County Court at Hall's sentencing which, in rejecting Hall's claim that he received the ineffective assistance of trial counsel, opined that it found:

> it incredible that [Hall] would attack [defense counsel], who convinced the jury that the People didn't have proof with regard to numerous of the counts charged in this indictment. The idea that you would attack his representation of you I find kind of unfair, because I thought he did an excellent job for you in the face of an incredible amount of incriminating evidence that was placed before a jury by a very, very good prosecutor.  And his work on your behalf I find to have been exemplary.

Sentencing Tr. at p. 5.

### ii.    Ineffective Assistance of Appellate Counsel

Hall also asserts numerous grounds for relief in which he contends that he received the ineffective assistance of appellate counsel.  See Am. Pet., Grounds-Thirty Eight through Forty-Seven; see also Traverse at pp. 9-11.  Since he has never filed an application seeking a writ of error coram nobis, see Am. Pet. at ¶ 10, these claims are also unexhausted.[8]

The Sixth Amendment's right to counsel has been interpreted to require that indigents be provided with assigned counsel for their first appeal as of right.  Douglas v.

---

[8]   Under New York Law, there is no time limit for filing an application for a writ of error coram nobis.  Smith v. Duncan, 411 F.3d 340, 348 n.6 (2d Cir. 2005).  Since Hall is not necessarily procedurally barred from asserting a claim with the Third Department regarding his appellate counsel's performance, this Court declines to deem Hall's claims challenging appellate counsel's performance to be exhausted and procedurally defaulted.  Loving v. O'Keefe, 960 F. Supp. 46, 48 (S.D.N.Y. 1997).

California, 372 U.S. 353, 358 (1963).  Therefore, an individual has a right to the

effective assistance of appellate counsel.  Evitts v. Lucey, 469 U.S. 387, 396 (1985).

The proper standard for evaluating claims that appellate counsel rendered ineffective

assistance is the test enunciated in Strickland.  See Smith v. Robbins, 528 U.S. 259,

287-89 (2000).

       To establish ineffective assistance of appellate counsel, "'it is not sufficient for

the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for

counsel does not have a duty to advance every nonfrivolous argument that could be

made.'"  Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (citing Jones v. Barnes, 463

U.S. 745, 754 (1983)); see also Atkins v. Miller, 18 F. Supp. 2d 314, 320 (S.D.N.Y.

1998) (citation omitted).  Rather, to prevail upon such a claim, Hall must demonstrate

that his counsel "omitted significant and obvious issues while pursuing issues that were

clearly and significantly weaker."  Clark, 214 F.3d at 322.  Thus, appellate counsel

cannot be considered ineffective for making a strategic decision to abandon weaker

arguments and, instead, develop only those arguments more likely to succeed.

Gonzalez v. Duncan, No. 00-CV-1857, 2001 WL 726985, at *6 (E.D.N.Y. June 22,

2001) ("A brief that raises every colorable issue runs the risk of burying good arguments

. . . in a verbal mound of strong and weak contentions.") (citing Jones, 463 U.S. at 753);

see also Parke v. United States, No. 97-CV-526, 1999 WL 242637, at *3 (N.D.N.Y. Apr.

22, 1999) (McCurn, S.J.), aff'd, 2002 WL 109475 (2d Cir. 2002).  To demonstrate

prejudice in this context, Hall must establish that, but for appellate counsel's errors,

"there is a reasonable probability that the outcome of the appeal would have been

different."  Carroll v. David, No. 04-CV-0307, 2009 WL 666395, at *10 (N.D.N.Y. Mar.

11, 2009) (McAvoy, S.J., adopting Amended Report-Recommendation of Bianchini, M.J.) (citing Strickland).

Hall's initial ground in support of his claim alleging ineffective assistance of appellate counsel contends that such attorney "failed to speak with" Hall before filing the appellate brief.  Am. Pet., Ground Thirty-Eight.  In his next claim, Hall contends that such counsel refused to allow petitioner the opportunity to review the trial record before counsel filed the appellate brief.  Id., Ground Thirty-Nine.  However, it should be noted that "'[a]n appellate attorney's failure to communicate with his or her client, by itself, does not constitute per se ineffective assistance of counsel.'"  See McIntyre v. Duncan, No. 03-CV-0523, 2005 WL 3018698, at *3 (E.D.N.Y. Nov. 8, 2005) (quoting Buitrago v. Scully, 705 F. Supp. 952, 955 (S.D.N.Y. 1989)).  Thus, "[a]lthough it may be desirable and productive, the Constitutional right to effective assistance of counsel does not encompass the requirement that an attorney consult with his client to discuss the alleged trial errors that his client wishes to pursue."  McIntyre, 2005 WL 3018698, at *3 (citation omitted).  Furthermore, petitioner has failed to establish that, had he been able to consult with his appellate attorney and/or review the trial record before counsel's appellate brief was filed, Hall would have asserted "significant and obvious issues" on appeal which were not raised by counsel in his appeal.  For these reasons, petitioner's Thirty-Eighth and Thirty-Ninth Grounds for relief will be denied.

Hall has also listed a number of apparent factual errors that are contained in appellate counsel's brief, which Hall in turn has asserted as separate grounds in support of his claim that he received the ineffective assistance of appellate counsel. For example, Hall claims his appellate counsel:  (1) "misrepresented the facts . . .

24

regarding how the police initially stopped [Hall] without a warrant;" (Am. Pet., Ground

Forty); (2) "misrepresented the facts . . . by stating that Holly McKenna never saw the

person who trespassed on [McKenna's] property;" (id., Ground Forty-One); (3)

"misrepresented the facts . . . by stating that [Hall] was escorted out of the police car by

a police officer (id., Ground Forty-Three); (4) "misrepresented the facts . . . by stating

that all sentences [were] to run concurrently" (id., Ground Forty-Four); and (5)

wrongfully stated that Hall was placed under arrest after the police received a call from

McKenna, the owner of a residence on New Scotland Avenue (the evidence establish

that McKenna lived on Van Schoick Avenue) (id., Ground Forty-Six; see also Trial Tr. at

p. 156).

  Even assuming, arguendo, that it was objectively unreasonable for counsel's

appellate brief to contain the misstatements/errors referenced above, Hall has plainly

failed to demonstrate that, had any of the above-described factual errors not appeared

in the appellate brief, there is a reasonable probability that the outcome of his appeal

would have been different.

  For example, while Hall may be correct in claiming that the appellate counsel

"misrepresented" the facts when counsel declared in his brief that McKenna lived on

New Scotland Avenue, rather than Van Schoick Avenue (compare App. Br. at p. 3; with

Trial Tr. at p. 156), and that counsel therefore also misrepresented the factual

circumstances surrounding the initial stop and subsequent arrest of petitioner (see Am.

Pet., Grounds Forty, Forty-Six), those misstatements plainly did not have any

substantive effect on the outcome of Hall's appeal because none of petitioner's

appellate claims sought reversal of the conviction based upon McKenna's address.[9] Additionally, there is no basis upon which to properly conclude that the outcome of Hall's appeal would likely have been different if appellate counsel had not erroneously declared in his brief that: (1) Holly McKenna "never saw the person who trespassed" on McKenna's property; (id., Ground Forty-One); (2) petitioner was escorted out of the police car by a police officer around the time of petitioner's identification (id., Ground Forty-Three); or (3) the sentences imposed on Hall by the County Court were ordered to run concurrent with one another (id., Ground Forty-Four).[10]  Thus, Hall is not entitled to federal habeas intervention with respect to any of the foregoing claims.

Considering next Hall's claim that appellate counsel contradicted petitioner's trial testimony when counsel purportedly claimed that Hall "was the person who trespassed on McKenna's property," see Am. Pet., Ground Forty-Two, such claim is not supported by the record.  Rather, the appellate brief indicates that counsel declared that McKenna had contacted law enforcement officials "to report a stranger" whom McKenna had seen on his property.  See App. Br. at pp. 2-3.  Later on in that brief, appellate counsel notes that a police officer testified at trial that McKenna had identified Hall as the individual who had intruded upon McKenna's property.  Id. at p. 6.  However, appellate

---

[9]  Petitioner does not clearly articulate how he claims that appellate counsel misrepresented the facts regarding the manner in which the police initially stopped Hall without a warrant.  See Am. Pet., Ground Forty.  Regardless, after review of the state court record, petitioner has not established that he is entitled to federal habeas intervention on this ground for relief.

[10]  Although appellate counsel incorrectly stated that the sentences imposed on Hall were all ordered to run concurrent with one another, see App. Br. at p. 2, such brief also correctly noted that the sentence imposed on Hall for the criminal possession of stolen property conviction was "a consecutive indeterminate term of 1 1/3 to 4 years."  See App. Br. at pp. 1-2.  Regardless, neither Hall's appellate counsel nor petitioner himself in his Pro Se Appellate Brief challenged, in any way, the sentences imposed on Hall.  See App. Br.; Pro Se Appellate Brief.

counsel did not declare in his appellate brief that Hall conceded that he was the individual who had trespassed on McKenna's property.  See App. Br.  Therefore, petitioner is not entitled to habeas relief on this theory.

Hall next takes issue with the fact that appellate counsel indicated in his brief that the Trial Court "rightfully instructed the jury regarding 'circumstantial evidence.'" See Am. Pet., Ground Forty-Five.  In counsel's appellate brief, Hall's attorney noted that because the Fifth and Sixth Counts in the Indictment "rested entirely upon circumstantial evidence" the Trial Court "rightfully instructed the jury" of that fact.  App. Br. at p. 16.  The record establishes that Hall's trial counsel specifically requested a "circumstantial evidence" charge because the evidence of petitioner's guilt rested on circumstantial evidence.  See Trial Tr. at p. 315.  The District Attorney implicitly conceded that such charge was appropriate when he declined to oppose the requested charge, which was beneficial to Hall.  Petitioner has failed to demonstrate that appellate counsel's reference to the foregoing charge was erroneous, objectively unreasonable, or in any way prejudicial to Hall's appeal.  Therefore, Hall's Forty-Fifth Ground for relief will be denied.

In the final unexhausted claim presently under consideration, Hall argues that his appellate counsel rendered ineffective assistance because he "failed to conduct inquiry into the arrest report . . . regarding a criminal threatening over the phone."  See Am. Pet., Ground Forty-Seven.  However, Hall has wholly failed to articulate how appellate counsel's claimed failure to investigate material and/or information contained on Hall's arrest report would have given rise to a significant and obvious appellate issue compared to the counsel's appellate arguments that:  (1)  McKenna's pretrial

identification of Hall was unduly suggestive; (2) the verdict was against the weight of the evidence; and (3) trial counsel wrongfully failed to claim that Hall was not mentally competent to stand trial.  See App Br., Points I-III.  Petitioner is therefore is not entitled to habeas relief on the Forty-Seventh Ground for relief asserted by him in his amended petition.

In sum, Hall's theories alleging ineffective assistance of both trial and appellate counsel which may not be deemed to have been procedurally defaulted are patently frivolous, and, further, that such grounds for relief do not raise even a colorable federal claim.  Therefore, Halls' Eleventh, Thirteenth, Eighteenth, Twenty-First, and Thirty-Eighth through Forty-Seventh Grounds for relief will be denied.

### 2.    Remaining Claims

The grounds for relief which Hall exhausted in the state courts will be considered next.

### a.    Standard of Review

The enactment of AEDPA brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted in Jones v. West, 555 F.3d 90 (2d Cir. 2009) that:

> a federal court may grant a writ of habeas corpus for a claim
> that has previously been adjudicated on the merits by a
> state court only if the adjudication of the claim:
>
>> (1) resulted in a decision that was contrary to,
>> or involved an unreasonable application of,
>> clearly established Federal law, as determined
>> by the Supreme Court of the United States; or

28

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

Id. at 96 (quoting 28 U.S.C. § 2254(d)); see also Schriro v. Landrigan, 550 U.S. 465,

473 (2007) (citing 28 U.S.C. § 2254(d)(1), (2)); Hawkins v. Costello, 460 F.3d 238, 242-

43 (2d Cir. 2006).  In providing guidance concerning application of this standard, the

Second Circuit has observed that:

> a state court's decision is "contrary to" clearly established
> federal law if it contradicts Supreme Court precedent on the
> application of a legal rule, or addresses a set of facts
> "materially indistinguishable" from a Supreme Court decision
> but nevertheless comes to a different conclusion than the
> Court did.  [Williams v. Taylor, 529 U.S. 362,] 405-06
> [(2000)]; Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001).
> . . .  [A] state court's decision is an "unreasonable
> application of" clearly established federal law if the state
> court "identifies the correct governing legal principle from
> [the Supreme] Court's decisions but unreasonably applies
> that principle to the facts" of the case before it.  Williams,
> 529 U.S. at 413.

Thibodeau v. Portuondo, 486 F.3d 61, 65 (2d Cir. 2007); see also Williams v. Artuz, 237

F.3d 147, 152 (2d Cir. 2001) (citing Francis S. v. Stone, 221 F.3d 100, 108-09 (2d Cir.

2000)).

     Significantly, a federal court engaged in habeas review is not charged with

determining whether the state court's ruling was merely incorrect or erroneous, but

instead whether such decision was "objectively unreasonable." Williams, 529 U.S. at

409; see also Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).  "While the precise

method for distinguishing objectively unreasonable decisions from merely erroneous

ones is somewhat unclear, it is well-established in this Circuit that the objectively

unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Sorto v. Herbert, 497 F.3d 163, 169 (2d Cir. 2007) (internal quotation marks and alteration omitted).  As the court noted in Schriro, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Id., 550 U.S. at 473.

### b.   Consideration of Hall's Exhausted Claims

#### i.   Sufficiency of the Evidence

In his Seventh Ground, Hall challenges the sufficiency of the evidence adduced at trial regarding the burglary charge of which he was convicted.  See Am. Pet., Ground Seven; see also Traverse at pp. 5; 7-8.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime(s) with which he is charged.  Fiore v. White, 531 U.S. 225, 228-29 (2001) (citations omitted); Jackson v. Virginia, 443 U.S. 307, 316-22 (1979); In re Winship, 397 U.S. 358, 361-64 (1970).  An inquiry into whether there was sufficient evidence adduced at trial to support a conviction "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993).  A habeas petitioner claiming that there was insufficient evidence supporting the conviction is only entitled to relief under 28 U.S.C. § 2254 if it is found

"that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324; Schlup, 513 U.S. at 323 n.38 (quotation omitted). The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. Jackson, 443 U.S. at 319. Thus, federal courts are to determine "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." United States v. Powell, 469 U.S. 57, 67 (1984) (citing Jackson) (other citations omitted).

Here, Hall has plainly failed to demonstrate that the Appellate Division's decision rejecting his challenge to the sufficiency of the evidence was either contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent. The Third Department discussed in some detail Hall's challenge to the evidence presented by the prosecution regarding his guilt of the burglary charge. As that court correctly noted, to establish petitioner's guilt of that charge, "the People were required to prove that defendant knowingly entered or remained unlawfully in a dwelling with the intent to commit a crime therein. Hall, 57 A.D.3d at 1225 (citing New York Penal Law section 140.25[2]). In conjunction with that charge, the prosecution presented the following evidence establishing Hall's guilt of the Frye burglary:

> Frye, who lives near the area where [Hall] was apprehended, testified at trial that he was away from his residence from approximately 6:00 A.M. to 9:15 or 9:30 P.M. on October 16, 2006 – the same day that [Hall] was seen in McKenna's yard and later apprehended by police. Upon returning home that evening, Frye immediately noticed that someone had been in his house and specifically observed that his jewelry box – where his dog tags were normally kept – was missing . . . . [Later that night] Frye . . . learned that

31

> the police had recovered several items that belonged to him, including his dog tags, cuff links, a leather box containing silverware, a maroon pillow case and a credit/debit card.
>
> * * * * *
>
> Frye's credit/debit card was retrieved from [Hall's] front pocket and the police found other items, including the cuff links and dog tags, either on defendant's person or in the maroon pillow case in his possession at the time of his arrest.

Hall, 57 A.D.3d at 1225.

Since strong evidence of petitioner's guilt of the burglary charge relating to Frye's residence was adduced at trial, the Third Department's decision denying Hall's appellate challenge to the sufficiency of the evidence regarding that charge was neither contrary to, nor suggestive of an unreasonable application of, the above-referenced Supreme Court precedent.  Therefore, Hall's Seventh Ground for relief will be denied.

### ii.    **Failure to Provide Hall with Appellate Record**

In his Ninth Ground, Hall notes that the Third Department granted him permission to file Pro Se Appellate Brief in further support of his direct appeal, however he notes that such court "refused to allow me to see the record" in conjunction with his preparation of that brief.  See Am. Pet., Ground Nine.

In Griffin v. Illinois, 351 U.S. 12 (1956), the Supreme Court held that "(d)estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts."  Id., 351 U.S. at 19.  The Supreme Court noted that such holding rested on the 'constitutional guaranties of due process and equal protection both (of which) call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons."  Id. at 17.  In Draper

32

v. Washington, 372 U.S. 487 (1963), the Supreme Court noted that, in terms of a trial

record, its holding in Griffin meant that the State must afford the indigent a "record of

sufficient completeness to permit proper consideration of (his) claims." Id., 372 U.S. at

499 (internal quotation and citation omitted).  "A 'record of sufficient completeness'

does not translate automatically into a complete verbatim transcript." Mayer v. City of

Chicago, 404 U.S. 189, 194 (1971).  As the Mayer Court noted:

> A statement of facts agreed to by both sides, a full narrative
> statement based perhaps on the trial judge's minutes taken
> during trial or on the court reporter's untranscribed notes, or
> a bystander's bill of exceptions might all be adequate
> substitutes, equally as good as a transcript.  Moreover, part
> or all of the stenographic transcript in certain cases will not
> be germane to consideration of the appeal, and a State will
> not be required to expend its funds unnecessarily in such
> circumstances.

Id. (internal quotation and citation omitted).

Initially, it is noted that "[i]t is within the Appellate Division's discretion to deny

even a timely supplemental [pro se appellate] brief . . . 'The decision . . . lies within the

sound discretion of the court.'" Reid v. Graham, No. 08 Civ. 363, 2009 WL 6759478, at

*19 (S.D.N.Y. Nov. 5, 2009) (quoting People v. White, 73 N.Y.2d 468, 479 (1989)),

adopted, Reid v. Graham, No. 08 Civ. 363, 2010 WL 3199865 (S.D.N.Y. Aug. 12,

2010).  Since Hall did not have any federal constitutional right to file a pro se appellate

brief, he may not now properly argue that the Third Department's failure to provide him

with a complete state court record before he submitted such brief deprived him of any

right under the United States Constitution.

Additionally, in the present case, the Appellate Division granted Hall permission

to file his Pro Se Appellate Brief, but denied Hall's request for "for [a] third [free] set of

the Court documents." Dkt. No. 32-5.  That court further observed that Hall's counsel had been provided a set of the state court records which would be "retained by him until the appeal process is completed."  Id.  The record further reflects that, in addition to appellate counsel's brief and attached appendix, Hall's appellate counsel sent a copy of the proposed Record on Appeal, which consisted of over two hundred (200) pages, to the District Attorney on March 31, 2008 – several months before Hall filed his Pro Se Appellate Brief.  See Dkt. No. 32-3, 32-4.[11]  It is apparent that Hall was provided with a record that was sufficiently complete so as to afford him the opportunity to properly consider those claims that he wished to assert on appeal.[12]

Nothing suggests – much less establishes – that petitioner was denied his right to adequately appeal his conviction because the Third Department denied his request for a set a state court records prior to his completing his Pro Se Appellate Brief.  Hall's Ninth Ground for relief will therefore be denied.

III.    **CERTIFICATE OF APPEALABILITY**

Finally, it is noted that 28 U.S.C. § 2253(c) provides, in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –

---

[11]  Petitioner has not demonstrated that he was denied access to the state court records in the related criminal matter.

[12]  It is noted that petitioner did not have a right under the United States Constitution to obtain a personal copy of the state court trial transcript. See, e.g., Coleman v. Phillips, 03CV1176, 2008 WL 170390 (N.D.N.Y. Jan. 16, 2008) (Kahn, J., adopting Report-Recommendation of DiBianco, Magistrate Judge) ("[T]here is no federal constitutional right to . . . have a personal copy of the trial transcripts.") (citations omitted); see also Brown v. Ebert, No. 05 CIV5579, 2006 WL 3851152, at *1, 4 (S.D.N.Y. Dec. 29, 2006) (habeas claim challenging denial by Appellate Division of petitioner's request to file pro se appellate brief "do[es] not implicate federal rights and therefore cannot provide the basis for habeas relief").

> (A) the final order in a habeas corpus
> proceeding in which the detention complained
> of arises out of process issued by a State
> court.[13]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the

applicant has made a substantial showing of the denial of a constitutional right."  See

28 U.S.C. § 2253(c)(2).  Since Hall has failed to make such a showing herein, a

Certificate of Appealability will not be issued in this matter.

Therefore, it is

ORDERED, that:

1.  Petitioner's Amended Habeas Petition, Dkt. No. 8, is DENIED and

DISMISSED;

2.  A Certificate of Appealability will not be issued in this matter; and

3.  The Clerk shall serve a copy of this Memorandum-Decision and Order on the

parties in accordance with this District's Local Rules.

IT IS SO ORDERED.

_____
United States District Judge

Dated:   August 11, 2011
         Utica, New York.

---

[13]  Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  See Fed. R. App. P. 22(b).